IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| MICHAEL & RHONDA BORDEN, ) | |
| ) | CASE NO. BK05-41272 |
| Debtor(s). ) | A06-4013 |
| GENOA NATIONAL BANK, a national ) | |
| banking association, ) | |
| ) | |
| Plaintiff, ) | CH. 12 |
| ) | |
| vs. ) | |
| ) | |
| SOUTHWEST IMPLEMENT, INC., a ) | |
| Nebraska corporation, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM

This matter is before the court on Genoa National Bank's motion for partial summary judgment (Fil. #18) and resistance by Southwest Implement, Inc. (Fils. #63 & 68). Donald L. Swanson and R. Scott Johnson represent Genoa National Bank, and David W. Pederson represents Southwest Implement. The motion was taken under advisement as submitted without oral arguments. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(K).

Genoa National Bank filed this adversary proceeding to determine the validity, extent, and priority of the respective lien interests of the parties in certain farm equipment owned by the debtors. The bank holds a perfected blanket security interest in the debtors' personal property, while Southwest Implement holds security agreements on two pieces of farm equipment originally financed through Deere & Company ("Deere").[1] The filed U.C.C. financing statements on the two items of equipment identify the debtor as "Mike Borden," rather than by his legal name of "Michael Borden." The bank believes the debtor's identification in this manner causes the financing statements to be

---

[1] The debtor purchased the equipment from Southwest Implement, Inc., which assigned the retail installment contracts and security agreements to Deere & Company. Deere filed proofs of claim on the two contracts in the bankruptcy case. Subsequently, Deere reassigned the contracts and proofs of claim to Southwest Implement. Because Deere no longer has any interest in the contracts or proofs of claim, Southwest Implement has been substituted as the party defendant in this adversary proceeding.

seriously misleading under Neb. Rev. Stat. U.C.C. § 9-506 and therefore ineffective. The bank seeks a ruling that its blanket lien in the personal property is superior to Southwest Implement's interest in the two pieces of farm equipment.

The bank filed its U.C.C. financing statement in 2002 to reflect its lien on all of the debtors' personal property, including all machinery and equipment then owned and thereafter acquired. The financing statement was recorded under the name "Michael R. Borden."

In 2004, Mr. Borden purchased a John Deere 9610 combine and a Sunflower 9431 drill from Southwest Implement. Southwest assigned the contracts to Deere & Company, and Deere filed U.C.C. financing statements with the Nebraska Secretary of State. Those financing statements identify the debtor as "Mike Borden."

Mr. Borden's legal name is Michael Ray Borden, and he is identified by that name or by "Michael R. Borden" on many legal documents (*i.e.*, birth certificate, driver's license, real estate deeds, bank accounts, tax returns, and bankruptcy petition), although he often signs legal documents, such as some tax returns, Farm Service Agency forms, security documents, and financial statements as "Mike Borden."

The bank argues that using "Mike Borden" on the financing statements is seriously misleading under the Nebraska U.C.C. and renders Southwest Implement's security interest unperfected. The Uniform Commercial Code requires that a financing statement provide the debtor's "individual name." Neb. Rev. Stat. U.C.C. § 9-503(a)(4)(A). A financing statement is effective even if it contains minor errors or omissions, unless the errors or omissions render the financing statement "seriously misleading." Neb. Rev. Stat. U.C.C. § 9-506(a). A financing statement that fails sufficiently to provide the name of the debtor is seriously misleading, unless the financing statement would appear in a search of the filing office's records under the debtor's correct name using the office's standard search logic. Neb. Rev. Stat. U.C.C. § 9-506(b) and (c).

In this case, the bank alleges that the financing statements naming "Mike Borden" do not appear among the results when the U.C.C. records are searched for "Michael Borden," so those financing statements are misleading and insufficient to protect Southwest's security interest.

In response, Southwest asserts that the financing statements are not misleading because Mr. Borden is commonly known, including among Genoa Bank personnel, as "Mike." Southwest argues that if the documents were found to be misleading, the bank would gain a windfall and Southwest would be deprived of its collateral.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation

Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004).

The issue raised in this case is a mixed question of law and fact. The interpretation of a state statute is a legal question, The CIT Group/Equip. Fin., Inc. v. M&S Grading, Inc. (In re M&S Grading, Inc.), 457 F.3d 898, 899 (B.A.P. 8th Cir. 2006), while the question of whether the debtor's name on the filed financing statement is sufficient appears to be a fact question. Transamerica Comm'l Fin. Corp. v. Blueville Bank of Grafton, 438 S.E.2d 817, 823-24 (W. Va. 1993); Mid-America Dairymen, Inc. v. Newman Grove Coop. Creamery, Inc., 214 N.W.2d 18, 26 (Neb. 1974) (sufficiency of secured creditor's address on financing statement depends on the circumstances of the particular case); 9 Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code §§ 9-402:36, -402:38 (3d ed.)[2].

The test of whether an error in a debtor's name on a financing statement is a fatal defect is whether a search of the filing office's records under the debtor's correct name, using the filing office's standard search logic, would disclose the financing statement. This differs from the earlier test of whether a reasonably diligent searcher would be able to locate the financing statement. "Revised Article 9 requires more accuracy in filings, and places less burden on the searcher to seek out erroneous filings. . . . Revised Article 9 rejects the duty of a searcher to search using any names other than the name of the debtor indicated on the public record of the debtor's jurisdiction of organization [in the case of a corporate debtor]."In re Summit Staffing Polk County, Inc., 305 B.R. 347, 354-55 (Bankr. M.D. Fla. 2003). A leading treatise on commercial law uses the following hypothetical to illustrate the differences between manual searches and computer searches, and the stricter requirements of computer searching:

> Assume for example the debtor is John P. Christensen, a name that might be spelled "Christiansen", "Christensen" or "Christenson". A reasonable searcher of paper records would be obliged by the ancient doctrine of *idem sonans* to search under names that might be spelled differently but sound the same. But what if the search is by computer and Christensen lives in a county in western Iowa where there are 100 persons with variations of the same name, some with a Danish spelling, some with a Norwegian spelling and some with neither? If the secured creditor enters the name incorrectly, and if the "search logic" of the Iowa computer does not bring up that filing when the correct debtor's name is inserted, the filing does not satisfy 9-503(a)(4)(A) and it would not be saved by 9-506(c) since using the filing office's "standard search logic" does not disclose the financing statement. On the other hand, section 9-506(c) states that if the filing office's standard search logic finds the financing statement searching under the debtor's correct name, this cures the problem. We suspect the opposite inference is intended as well, namely that if the standard search logic (when instructed to use the correct name) fails to find a

---

[2]Parts of former U.C.C. § 9-402 became U.C.C. §§ 9-502 to -507 in the 1999 revisions to Article 9.

financing statement because the name is incorrect, that renders the financing statement not only non-compliant with 9-502 and 9-503, but also means that it fails "substantially" to satisfy the "requirements of this Part" under 9-506 and so is "seriously misleading".

4 James J. White & Robert S. Summers, Uniform Commercial Code § 31-12 at 174-75 (5th ed. 2002).

A number of recent court decisions have addressed the scope of U.C.C. § 9-506(c) and whether the name used rendered the financing statement seriously misleading.

In Receivables Purchasing Co., Inc. v. R&R Directional Drilling, L.L.C., 588 S.E.2d 831 (Ga. Ct. App. 2003), the debtor's name was Network Solutions, Inc. The financing statement listing "Net work Solutions, Inc.," was seriously misleading because it did not show up in a search using the correct name. In Corona Fruits & Veggies, Inc. v. Frozsun Foods, Inc., 48 Cal. Rptr. 3d 868 (Cal. Ct. App. 2006), the debtor's correct name was Armando Munoz Juarez. The financing statement listed his name as "Armando Munoz," which the court found to be seriously misleading because the objecting creditor had searched under the name of "Juarez" and did not find this financing statement.

In All Business Corp. v. Choi, 634 S.E.2d 400 (Ga. Ct. App. 2006), the debtor's correct name was Sang Woo Gu. All Business Corporation's financing statement listed his name as "Gu, Sangwoo." A creditor searched the records for "Sang Woo Gu" and did not locate this financing statement. A representative of All Business Corporation testified that he searched the records for "Gu" and found the financing statement at issue. The court nevertheless discounted that testimony, finding it inapposite because the representative did not search for the debtor's "correct name." Because the defendant's evidence established that a search using the debtor's correct name did not reveal the financing statement, the financing statement was seriously misleading.

In Pankratz Impl. Co. v. Citizens Nat'l Bank, 130 P.3d 57 (Kan. 2006), the debtor's correct name was Rodger House. The financing statement listed his name as "Roger House," which the court found to be seriously misleading because a search of the records under the debtor's correct name using the filing office's standard search logic did not disclose this financing statement. The Kansas Supreme Court followed the reasoning employed by the Tenth Circuit Bankruptcy Appellate Panel in Clark v. Deere & Co. (In re Kinderknecht), 308 B.R. 71 (B.A.P. 10th Cir. 2004), where a financing statement naming the debtor as "Terry J. Kinderknecht" rather than "Terrance J. Kinderknecht" was found to be seriously misleading. The Kinderknecht court held that requiring an individual debtor's legal name to be used on U.C.C. financing statements maintains the same standard applied to debtor entities and it establishes a clear-cut test for evaluating the sufficiency of a financing statement, which is one of the stated purposes of Revised Article 9 (see, e.g., Official Comment 2 to Neb. Rev. Stat. U.C.C. § 9-506 (stating "the policy of this article [is] to simplify formal requisites and filing requirements.")). In addition, the Kinderknecht court enumerated four practical considerations for its conclusion:

>    Our conclusion that a legal name is necessary to sufficiently provide the name of an individual debtor within the meaning of [U.C.C. § 9-503(a)] is also supported by four practical considerations. First, mandating the debtor's legal name sets a clear test so as [to] simplify the drafting of financing statements. Second, setting a clear test simplifies the parameters of U.C.C. searches. Persons searching U.C.C. filings will know that they need the debtor's legal name to conduct a search, they will not be penalized if they do not know that a debtor has a nickname, and they will not have to guess any number of nicknames that could exist to conduct a search. Third, requiring the debtor's legal name will avoid litigation as to the commonality or appropriateness of a debtor's nickname, and as to whether a reasonable searcher would have or should have known to use the name. Finally, obtaining a debtor's legal name is not difficult or burdensome for the creditor taking a secured interest in a debtor's property. Indeed, knowing the individual's legal name will assure the accuracy of any search that creditor conducts prior to taking its secured interest in property.

308 B.R. at 75-76 (footnotes omitted).

The Kansas Supreme Court said that the legislative language and purpose evidenced an intent to shift the responsibility of getting the debtor's name right to the party filing the financing statement. This approach would enable a searcher to rely on that name and eliminate the need for multiple searches using variants of the debtor's name, all leading to commercial certainty. Pankratz, 130 P.3d at 63.

As in Kinderknecht, the official Nebraska UCC1 form requires the "debtor's exact full legal name." The instructions further direct that the debtor's "first given name" be entered in the form's "First Name" box. An instruction to use the debtor's "first given name" presumably serves to exclude the use of a nickname or short form of a given name.

The bank's evidence includes an affidavit from one of its loan officers who explains how she conducted a U.C.C. search via the Nebraska Secretary of State's website for filings naming Michael R. Borden as debtor. Aff. of Lori Swertzic (Fil. #33). The website's search criteria permit a searcher to search the U.C.C. lien records, using the debtor's "exact legal name," as well as non-U.C.C. liens, for which a nickname or abbreviated name may be used.

Southwest Implement asked an officer of another bank to perform a similar search using "Mike Borden" for the U.C.C. search and "Borden" for the non-U.C.C. wildcard search. That search turned up seven U.C.C. filings for Mike Borden, including the financing statements at issue in this case. Aff. of Brian Esch (Fil. #66).

It is unclear from the information provided about the Secretary of State's web-based search capabilities whether a search of U.C.C. records could be conducted using a partial first name or a generic character to encompass multiple spellings of a name, for example. However, to wonder about

such a search capacity would solely be speculation, given the evidence that searches were conducted using the names "Michael" and "Mike" to find all of the U.C.C. filings. When the standard search logic of the filing office does not allow for expanded searches using wildcard functionality to cover all forms of a name, the searcher should not be required to separately search each possible name to ensure that all possibilities have been exhausted. The statute requires the debtor's "correct name," which the official forms and the Nebraska Secretary of State interpret as the debtor's "exact legal name." It is not much of a burden on a party taking a security interest from an individual known as "Mike" or "Bill" to ask if the individual's "correct name" is "Michael" or "William." The same thinking would apply to a debtor known popularly by a nickname such as "Junior" or "Shorty," for instance. A creditor could certainly assume that the debtor may be legally known by another name. Although U.C.C. § 9-506(a) offers a safe harbor for financing statements containing "minor errors or omissions," it is unclear how an altered or misspelled name could ever constitute a "minor error" in light of filing offices' exacting computer search logic and court decisions such as <u>Pankratz</u> and <u>Kinderknecht</u>. To adequately protect itself, the creditor should do its best to ensure that its Article 9 lien documents are filed under the debtor's legal name.

A separate order will be entered granting Genoa National Bank's motion for partial summary judgment.

DATED:	November 2, 2006

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
	*Donald L. Swanson
	*R. Scott Johnson
	David W. Pederson
	Richard Lydick
	U.S. Trustee

Movant (*) is responsible for giving notice of this order to other parties if required by rule or statute.